BOARD OF GOVERNORS OF STATE COLLEGES AND UNIVERSITIES FOR NORTHEASTERN ILLINOIS UNIVERSITY, Plaintiff-Appellee, *v.* MARLENE ROTHBARDT, Defendant-Appellant.

Fourth District    No. 16767

Opinion filed July 17, 1981.

Lynn Sara Frackman and Sargent L. Aborn, both of Meites & Frackman, of Chicago, for appellant.

Dunn, Brady, Goebel, Ulbrich, Morel, Kombrink & Hundman, of Bloomington (Frank M. Brady, Kenneth G. Kombrink, and Mark T. Dunn, of counsel), for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

On October 31, 1973, defendant, Marlene Rothbardt, filed charges with defendant State of Illinois Fair Employment Practices Commission (FEPC) against plaintiff, Board of Governors of State Colleges and Universities, alleging she had been discriminated against because of her sex by Northeastern Illinois University, an institution under the governance of plaintiff. On August 15, 1979, the FEPC entered an order stating that it affirmed and adopted the March 15, 1979, "Recommended Order and Decision" of an administrative judge and ordered that "the relief specified therein be implemented forthwith." The thrust of the recommended order was that Rothbardt be reinstated to a teaching position with Northeastern University and be awarded $90,779 lost compensation for a period from September 1972 through June 1978.

Plaintiff brought suit in the circuit court of Sangamon County for administrative review of the FEPC decision. On October 15, 1980, that court reversed, holding that: (1) the FEPC lacked jurisdiction of the charge because of its tardy filing; and (2) in any event, its decision was contrary to the manifest weight of the evidence. Defendant Rothbardt then appealed to this court, maintaining: (1) the circuit court erred in denying her prehearing motion for a change of venue to the circuit court of Cook County; (2) the FEPC had jurisdiction; and (3) the administrative decision was sufficiently supported by the evidence.

Section 12 of the Fair Employment Practices Act has required that proceedings for administrative review or judicial enforcement of FEPC decisions,

"* * * shall be commenced in the Circuit Court in and for the county wherein the unfair employment practice which is the subject of the Commission's order was committed or wherein any person required to cease and desist by such order resides or transacts business * * *." (Ill. Rev. Stat. 1977, ch. 48, par. 862.)

Northeastern University was shown, at all times, to have been located in Cook County, and all acts comprising the alleged discrimination were claimed to have taken place there. Plaintiff was shown to have its office in Springfield in Sangamon County. Under section 12, venue in the circuit court of Sangamon County was proper only if the administrative order appealed required plaintiff to cease or desist. The record is somewhat confused in that respect.

A "Recommended Order and Decision" of an administrative law judge entered April 21, 1976, had proposed entry of an order against plaintiff requiring it to cease and desist the "practice of discriminating against women who choose to have children and at the same time pursue a professional academic career." This recommendation was never adopted by the FEPC although the conclusion of the administrative judge that defendant Rothbardt had proved her charge was adopted by the FEPC order dated January 12, 1977. The proceeding was then remanded to an administrative law judge for determination of the appropriate relief to be granted. After further hearing, another administrative law judge, on March 15, 1979, filed a document also entitled "Recommended Order and Decision." The portion of that document headed "Recommended Order" was silent as to any direction for plaintiff to cease and desist. Under the heading of "Discussion", a portion of the same document stated that (1) defendant Rothbardt was entitled to compensation and an order directing reinstatement, and (2) "[a]dditionally, an order directing Northeastern to cease and desist from the unfair employment practice of discriminating against women who choose to have children and at the same time pursue

a career, is proper." Finally, on August 15, 1979, the FEPC entered the order which stated that it affirmed and adopted "the Recommended Order and Decision" of March 17, 1979, and ordered that "the relief specified therein be implemented forthwith." It also ordered plaintiff to report to the FEPC within 45 days as to "the steps it has taken in compliance herewith."

Although the record is confusing, we conclude that plaintiff was under an order to cease and desist. The Recommended Order and Decision of the administrative judge entered April 21, 1976, not only recommended the issuance of a cease and desist order but also recommended that plaintiff be required to report to the FEPC within 45 days as to the steps that it had taken to prevent the type of discrimination found to have existed. The document filed by a different administrative judge on March 15, 1979, contained no similar recommendation nor did it say such would be proper or desirable. The final FEPC order entered August 15, 1979, did require plaintiff to make a timely report as to its compliance. If plaintiff were merely required to make reparations to and reinstate defendant Rothbardt, reporting as to compliance would not have been logical. Rather, it would appear that FEPC deemed plaintiff to be under an order to cease and desist as recommended by the prior administrative judge and, as also recommended by that judge, wished a report on the actions taken to prevent further discrimination. Further weight is given to this interpretation by the FEPC action in adopting not only the "Recommended Order" but also the "Decision" of March 15, 1979, which deemed a cease and desist order to be proper.

■■ As plaintiff was under a cease and desist order, venue was properly in the circuit court of Sangamon County and that court properly denied the motion to dismiss.

We next turn to the question of whether the charge was timely filed. At the time of its filing, section 8 of the Fair Employment Practices Act provided for initiation of proceedings under the Act:

"Whenever within 180 days after the date that an unfair employment practice allegedly has been committed, a charge in writing under oath or affirmation is filed with the Commission by a complainant * * *." (Ill. Rev. Stat. 1973, ch. 48, par. 858.)

At the time section 8.01(a) of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 858.01(a)) provided that the FEPC, after investigating the charges and attempting to settle the dispute, should either file a complaint against the respondent within 180 days of the filing of the charges, or such extension as agreed upon in writing between the parties, or order that no complaint be issued.

In *Springfield-Sangamon County Regional Plan Com. v. Fair Em-*

*ployment Practices Com.* (1978), 71 Ill. 2d 61, 373 N.E.2d 1307, the supreme court held the FEPC to be without jurisdiction to proceed when the FEPC had failed to file a complaint within the 180-day period of section 8 even though the complainant had filed a charge within the time required by section 8. (Accord, *Board of Governors v. Illinois Fair Employment Practices Com.* (1979), 78 Ill. 2d 143, 399 N.E.2d 590.) Logic requires that if, as there, a claimant was to be deprived of a hearing on his claim because the FEPC had been dilatory in meeting the filing requirements of section 8, here, if the claimant herself was dilatory in meeting the filing requirements of section 8, she too would be deprived of her claim. (See dictum in *Moss-American, Inc. v. Illinois Fair Employment Practices Com.* (1974), 22 Ill. App. 3d 248, 254, 317 N.E.2d 343, 347-48.) The purpose of the section 8(a) requirement was stated in *Springfield-Sangamon County Regional Plan Com.* to be to expedite conciliation and diminish expense to employers who might be found to be liable for back pay to claimants. Although we are not advised of any decision passing upon the question of whether compliance with the section 8 filing requirement is a necessary condition for the FEPC to have jurisdiction, we hold that it is. Moreover, even if timely filing was not a jurisdictional requirement in the sense it could not be waived, it was a protection to which plaintiff was entitled. It has raised the issue at every stage and has not waived it. Reversible error would have occurred if the FEPC proceeded upon an untimely charge.

Accordingly, we must determine when the discriminatory practice claimed here occurred. Discussion of this requires narration of the series of events which gave rise to the charge.

Defendant Rothbardt began teaching in the department of elementary education at Northeastern in the fall of 1969. She took a leave of absence without pay from January 1, 1971, to September 1, 1971, to work on her doctorate. According to the testimony, she telephoned her department chairman in April of 1971 and told him she and her husband were thinking about starting a family. The chairman was stated to have advised her to wait before becoming pregnant because he needed her to teach and that a pregnancy at that stage of her career would harm it. In July of 1971 Rothbardt and her husband called upon the department chairman, told him she was pregnant, asked for a rearrangement of her proposed teaching schedule for the fall of 1971 to ease the strain upon her and asked for a maternity leave from January 1972 through June 1972. The next day the chairman convened two departmental committees, those dealing with tenure and appointments. According to the evidence the usual practice was to give ample notice of meetings of the committees, but only a few hours notice was given for these. Four members attended each meeting and both groups voted not to retain Rothbardt beyond the 1971-72

academic year. On January 20, 1972, the tenure committee, with the department chairman and 10 members present, voted not to reconsider.

Subsequently, the president of Northeastern University, Dr. Jerome Sachs, formed an *ad hoc* committee to study the matter. It held hearings in April 1972 and issued a report July 18, 1972, unanimously agreeing that insufficient grounds had been presented to support the "nonretention" of Rothbardt. Nevertheless, Dr. Sachs announced a decision on July 24, 1972, to tender Rothbardt a contract for 10 months during the period September 1, 1972, through August 31, 1973, with the contract providing that she would not thereafter be retained as a member of the faculty. Dr. Sachs was requested to "reconsider" his decision but wrote Rothbardt on September 5, 1972, stating that he refused to do so. However, in late May 1973, after various further requests that he reconsider, Dr. Sachs listened to tape recordings of the *ad hoc* committee. On June 1, 1973, he wrote Rothbardt stating that his study of the recordings convinced him that the evidence supported the original decision to terminate her position on the faculty and that he would not "reconsider" that decision. Rothbardt completed her service for the school on June 30, 1973.

Defendant Rothbardt maintains that the allegedly discriminatory decision was not completed until she finished her work for the school on June 30, 1973. In the alternative, she claims that it occurred when, on June 1, 1973, Dr. Sachs wrote to her stating his refusal to "reconsider" his prior decision. The FEPC found the latter date to be controlling. Plaintiff asserts that the school's decision was final upon Dr. Sachs' announcement on July 24, 1972, that the contract tendered then would be a terminal one. Both dates claimed by Rothbardt are within the 180-day period prior to her filing of charges on October 31, 1973, but that claimed by plaintiff was not.

In determining the date upon which any allegedly discriminatory conduct chargeable to plaintiff was completed, we find the recent decision of the United States Supreme Court in *Delaware State College v. Ricks* (1981), ___ U.S. ___, 66 L. Ed. 2d 431, 101 S. Ct. 498, to be persuasive although not precedentially binding. Ricks sued in a Federal district court alleging that he had been denied tenure by the college because of his national origin. One charge was made under the provisions of title VII of the Federal Civil Rights Act and another under 42 U.S.C. 1981. Before bringing suit under title VII, timely filing before the Federal Equal Opportunities Commission was required (42 U.S.C. 2000e5(c)). The time for filing the section 1981 action was governed by the State statute of limitations. The district court dismissed the complaint on the grounds that the title VII action had not been preceded by a timely filing with the Equal Employment Opportunities Commission and the section 1981 action was barred by the statute of limitations. The United States

Circuit Court of Appeals reversed (*Ricks v. Delaware State College* (3d Cir. 1979), 605 F.2d 710), but the United States Supreme Court in turn reversed, affirming the district court.

In determining when the alleged discrimination against Ricks had been completed, the United States Supreme Court considered three dates (1) June 26, 1974, when Ricks was informed he had been given a terminal contract, (2) September 12, 1974, when he was informed a grievance he had filed with the Education Policy Committee of the college had been denied, and (3) June 30, 1975, when his employment actually terminated. The circuit court of appeals had determined the latter date to control and Ricks had requested either that date or the date when he was informed of his grievance denial be deemed to control the dates for the filings.

The argument, adopted by the circuit court of appeals and presented here by Rothbardt, for considering the period for filing to have begun when the employment actually terminated is that to require filing a charge earlier would discourage conciliation. The United States Supreme Court rejected that argument and stated:

> "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination [citing *United Airlines v. Evans* (1977), 431 U.S. 553, 52 L. Ed. 2d 571, 97 S. Ct. 1885.]" (___ U.S. ___, ___, 66 L. Ed. 2d 431, 439, 101 S. Ct. 498, 504.)

The court indicated that the date any discrimination occurred should be distinguished from the date such conduct took effect. It stated that Congress had provided for the date of the conduct to be determinative and noted that the policy reasons for having a time limitation for bringing actions served the same policy considerations in a discrimination case as in other types of litigation.

Two theories had been advanced as to why September 12, 1974, the date when Ricks learned of his grievance denial, should have been selected as the date when the time period for filing began. One theory was that the termination was not final until then, particularly in view of the fact that the letter of June 26, 1974, telling him of his termination mentioned the pendency of the grievance. The other theory was that even if the decision to terminate announced June 26, 1974, was final, the pendency of the grievance tolled the running of the periods for filing. The *Ricks* court rejected both theories. It deemed the existence of the grievance not to have negated the finality of the decision to terminate and stated:

> "The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made." (___ U.S. ___, ___, 66 L. Ed. 2d 431, 441, 101 S. Ct. 498, 506.)

The court also disagreed that the period had been tolled, relying on *International Union of Electrical Workers v. Robbins & Myers, Inc.* (1976), 429 U.S. 229, 50 L. Ed. 2d 427, 97 S. Ct. 441, which held that collateral review of a decision to fire someone will not suspend a period of limitations.

Finally, the court considered the various procedures that had taken place prior to the decision announced on June 26, 1974, and concluded that the district court's decision that the limitation periods began to run no later than that date was not erroneous.

■■ At all times pertinent here, section 8 of the Fair Employment Practices Act (Ill. Rev. Stat. 1973, ch. 48, par. 858) provided that the 180-day period for filing the charge was to begin when the unfair practice "has been committed." The analogy to *Ricks* was complete in this respect. Section 8 provided for procedures aimed at conciliation which would take place after the filing of the charge, thus diminishing the strength of any argument to construe the last day of employment as the date the filing period began in order to facilitate conciliation. Such conciliation proceeding by the FEPC would be no more disruptive of the employment relationship than those taking place within the employment unit.

The letter advising Ricks of his termination indicated that the outcome of the pending grievance procedure would, if favorable to Ricks, control over the action set forth in the letter. Nothing in Dr. Sachs' announcement of July 24, 1972, so qualified his decision. No formal proceedings amounting to reconsideration ever took place thereafter. Dr. Sachs' position was always that he would not reconsider, and this was the thrust of his letter of June 1, 1973. His listening to the tapes did not amount to even the granting of an informal "remedy for a prior decision" deemed to be insufficient to start anew the time for filing in *Ricks*. For a decision-maker to continue to study the rationale of a previous ruling does not amount to a reconsideration of the ruling and does not change the date of the formal action.

We agree with the circuit court that the evidence and other portions of the record show, as a matter of law, that the charge was not timely filed.

For the reasons stated, we affirm.

Affirmed.

WEBBER and MILLS, JJ., concur.