PETER LEE, Plaintiff-Appellee, *v.* THE HUMAN RIGHTS COMMISSION, STATE OF ILLINOIS, *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 83—1985

Opinion filed July 24, 1984.

John O. Demaret, of Chicago (Lorene F. Murray, of counsel), for appellants.

Sullivan & Associates, Ltd., of Chicago (Gregory A. Stayart, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff Peter Lee filed a charge of handicap discrimination with the Fair Employment Practices Commission (the Commission) on June 2, 1980. On June 30, 1981, the Commission filed a complaint against defendant, the Chicago Transit Authority (CTA), on plaintiff's behalf. Defendant filed a motion to dismiss alleging, *inter alia*, that plaintiff's charge was untimely filed and that, therefore, the Commission lacked jurisdiction to hear plaintiff's claim. The administrative law judge (ALJ) of the Illinois Human Rights Commission (successor to the Fair Employment Practices Commission) granted defendant's motion and issued a recommended order and decision on April 16, 1982. Plaintiff filed exceptions to the recommended order and decision, but the Commission affirmed the dismissal of the complaint on August 3, 1982.

Plaintiff filed a complaint for administrative review of the Commission's decision in the circuit court of Cook County. On May 5, 1983, the circuit court ruled that the Commission's order and decision be reversed and that the matter be remanded to the Commission for further proceedings. After a denial of its post-trial motion, defendant instituted this appeal.

Plaintiff became a bus servicer with defendant in 1974. On May 25, 1977, plaintiff injured his back while at work. Plaintiff twice attempted to return to work and reinjured his back on both occasions. Plaintiff wore a steel back brace and was under the care of an orthopedic specialist from June until August 24, 1977. On October 21, 1977, plaintiff reported to defendant that he was awaiting admission to a hospital. On December 13, 1977, plaintiff informed defendant that he was in traction but would report to work on December 19, 1977. On December 19, 1977, plaintiff reported to defendant that he

would continue to be under a doctor's care until February 18, 1978. On that date, plaintiff reported for work wearing a steel back brace and was informed that he must procure a note from his physician concerning the reason for the brace, any lifting restrictions and the estimated length of time that plaintiff had to wear the brace. Plaintiff returned to work on February 27, 1978, with a note from his physician stating that the brace was intended to treat a back injury, that plaintiff should not lift over 100 pounds and that the length of time that the brace must be worn was unknown. (A bus servicer cleans, fuels, transports and repairs buses and must be able to lift and/or carry at least 100 pounds.) Because of the restrictions, plaintiff was not allowed to return to work. On March 27, 1978, defendant found plaintiff unfit to work as a bus servicer.

After March 27, 1978, plaintiff attempted to gain reinstatement to his position as bus servicer on four occasions. On August 17, 1978, plaintiff's physician released plaintiff to return to work without restrictions. Defendant informed plaintiff that his case would be reviewed and clarified. On October 16, 1978, defendant's physician approved plaintiff to return for nonoperating work (not bus service). Thereafter, plaintiff filed a grievance in accordance with his collective bargaining agreement in an attempt to regain his position as a bus servicer. This grievance was denied on January 15, 1979. Plaintiff then invoked a clause in his collective bargaining agreement which required that plaintiff be examined by a "disinterested" physician. It was this physician's opinion that plaintiff should not be allowed to return to work as a bus servicer, and on this basis defendant again denied plaintiff reinstatement on March 14, 1980. After this denial of reinstatement, plaintiff filed his charge of handicap discrimination with the Commission on June 2, 1980. A complaint was filed on June 30, 1981, but was dismissed on the ground that the discriminatory act cited in the complaint did not occur within 180 days of the filing of the charge. Plaintiff appealed to the circuit court of Cook County, which found that plaintiff's attempts to gain reinstatement should be considered in calculating the 180-day filing period and that these attempts rendered the filing of the charge timely. After a denial of its post-trial motion, defendant appealed from the circuit court's decision.

■ The general issue before this court is whether plaintiff's charge before the Commission was timely filed. In the instant case, plaintiff filed his charge with the Illinois Fair Employment Practices Commission on June 6, 1980. At that time, filing procedures before the Commission were governed by section 8 of "An Act to promote the public health, welfare and safety of the People of the State of Illi-

nois by reducing denial of equality of employment opportunity." (Ill. Rev. Stat. 1975, ch. 48, par. 858.) In pertinent part, section 8 states:

"Whenever within 180 days after the date that an unfair employment practice allegedly has been committed, a charge in writing under oath or affirmation is filed with the Commission by a complainant *** in such detail as to substantially apprise any party properly concerned as to the time, place and facts with respect to such alleged unfair employment practice *** the Commission shall promptly serve a copy of the charge within 10 days on the respondent ***."

Plaintiff suggests that the 180-day limitation on filing a charge is permissive rather than mandatory and that therefore the Commission erred by strictly applying the 180-day limitation to the facts of his case. But in *Board of Governors v. Rothbardt* (1981), 98 Ill. App. 3d 423, 424 N.E.2d 742, the court held that the 180-day filing requirement is jurisdictional. (98 Ill. App. 3d 423, 426.) Thus, the Commission was not at liberty to relax the filing requirement and a failure to file within the prescribed limits deprives the Commission of jurisdiction.

■■ Alternatively, plaintiff contends that by its misleading conduct defendant prevented plaintiff from timely filing his charge of discrimination. Plaintiff cites the following four instances as examples of the misleading conduct engaged in by defendant.

(1) The CTA told Lee on August 17, 1978, that "his case would be reviewed and clarified";

(2) Lee reported to the CTA on October 16, 1978, with the approval of the CTA, for nonoperating work;

(3) Lee filed a grievance to be reinstated to operating work, pursuant to his collective bargaining agreement, which was responded to and eventually denied by the CTA on January 15, 1979; and

(4) The CTA had Lee examined by another physician on March 14, 1980, pursuant to Lee's collective bargaining agreement.

Plaintiff correctly asserts that if his charge was untimely filed because of defendant's misleading conduct, defendant will be estopped from raising the limitations period as a defense. (See *Sabath v. Morris Handler Co.* (1968), 102 Ill. App. 2d 218, 223, 243 N.E.2d 723.) But defendant will only be estopped if it was conduct initiated by defendant which induced plaintiff not to act. (See 102 Ill. App. 2d 218, 223.) In the instant case, the four examples of misleading conduct cited by plaintiff were either conduct initiated by plaintiff alone

or are not sufficient to make plaintiff's charge timely.

Plaintiff's first averment is that on August 17, 1978, defendant told plaintiff that "his case would be reviewed and clarified." Defendant allegedly made this representation in response to the production by plaintiff of a doctor's report clearing plaintiff for work with no restrictions. Thus defendant's representation was prompted by plaintiff's conduct in the first instance. Moreover, defendant's representation does not alter the finality and actionability of defendant's March 27, 1978, decision not to reinstate plaintiff to his former position. Defendant merely stated that the case would be "reviewed and clarified." It did not indicate that its earlier decision would be held in abeyance or that it was vacating that decision and re-opening the case. Under these circumstances, it does not appear that this statement should have misled plaintiff into delaying the filing of his charge.

Plaintiff's second averment concerns the fact that plaintiff reported for "non-operating" work on October 16, 1978. The record indicates that "non-operating" work is not the type of work which plaintiff sought. This action, which was initiated by plaintiff, would not, therefore, serve as a reasonable basis for failing to file a charge relating to defendant's March 27 decision not to reinstate plaintiff as a bus servicer.

The final two instances cited by plaintiff were actions taken by defendant pursuant to plaintiff's collective bargaining agreement. In both instances, plaintiff initiated the actions and defendant followed up on plaintiff's actions because it was bound to do so under plaintiff's collective bargaining agreement. Under these circumstances, it is apparent that defendant did not mislead plaintiff in any way.

The next issue before us is whether plaintiff's charge was timely filed.

The charge in the instant case was filed on June 6, 1980. It was on March 27, 1978, that defendant refused to allow plaintiff to return to his position as a bus servicer. Defendant contends that the sole basis for plaintiff's complaint was the March 27 refusal to reinstate and that, therefore, the charge was not filed within the 180-day limitation period. Plaintiff notes that on four occasions following March 27, 1978, he unsuccessfully attempted to regain his former position. Plaintiff asserts that these subsequent rejections by defendant represent a continuing pattern of discrimination by defendant which brings plaintiff's charge within the 180-day filing period. Plaintiff's "continuing pattern of discrimination" argument does not resolve the issue of the timeliness of plaintiff's charge.

The seminal act of alleged discrimination from which all others followed was the March 27, 1980, decision not to reinstate plaintiff. On four occasions subsequent to March 27, defendant refused plaintiff's requests for reinstatement. Clearly, these subsequent refusals by defendant perpetuated the impact of the decision not to reinstate on March 27. But in resolving the issue before us, the emphasis should not be placed on the continuing impact of a past violation; rather, the critical question is whether any present violation exists. (See *United Air Lines, Inc. v. Evans* (1977), 431 U.S. 553, 558, 52 L. Ed. 2d 571, 578, 97 S. Ct. 1885, 1889 (Title VII case).) Plaintiff's argument diverts attention from this critical question.

The "continuing pattern of discrimination" argument implies that each attempt by plaintiff to gain reinstatement "revived" the preceding alleged acts of discrimination such that if any of the attempts to gain reinstatement fell within the limitations period, all preceding incidents of alleged discrimination could properly be included as bases for a charge of discrimination. But as we noted above, the crucial issue is whether a present violation exists. Accordingly, each instance of alleged discrimination is to be viewed as an independent act of discrimination which is subject to its own limitations period. Any preceding acts of discrimination which are not made the basis for a timely charge are the legal equivalent of a discriminatory act which occurred before the employment discrimination statute was passed. See 431 U.S. 553, 558, 52 L. Ed. 2d 571, 578, 97 S. Ct. 1885, 1889.

In the instant case, plaintiff was not allowed to return to his position as a bus servicer on March 27, 1978. Plaintiff unsuccessfully sought reinstatement to his former position on August 17, 1978; October 16, 1978; January 15, 1979; and March 14, 1980. Plaintiff filed his charge of discrimination with the Commission on June 2, 1980. Thus, the only act of alleged discrimination which occurred within 180 days of June 2, 1980, was defendant's refusal to reinstate plaintiff on March 14, 1980. Each of the prior alleged acts of discrimination became actionable, and a 180-day limitations period began to run on them, on the date that they occurred. Only defendant's rejection of plaintiff's request for reinstatement on March 14, 1980, could have served as the basis for the complaint for discrimination.

The next question that arises is whether the rejection of March 14, 1980, can qualify as an independent act of discrimination.

Plaintiff contends that each time defendant rejected his attempts to gain reinstatement after March 27, 1978, a new, independent act of discrimination was committed. But the decision not to reinstate plaintiff was made on March 27, 1978, and there is no indication in the re-

cord that this decision was tentative or subject to periodic review. Thus, it is doubtful that defendant's repeated refusal to reverse its March 27 decision can be viewed as new incidents of discrimination. This is especially true when one considers that it was plaintiff who initiated each attempt to gain reinstatement. These post-March 27 attempts to gain reinstatement are similar to the pursuance of a grievance procedure.

In *Delaware State College v. Ricks* (1980), 449 U.S. 250, 66 L. Ed. 2d 431, 101 S. Ct. 498, the Supreme Court, in reviewing a title VII decision, stated that:

> "entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made." (449 U.S. 250, 261, 66 L. Ed. 2d 431, 441, 101 S. Ct. 498, 505-06.)

It is appropriate to examine Federal decisions in the fair employment field because of the similarities between the Federal and Illinois fair employment enactments. (See *Montgomery Ward & Co. v. Fair Employment Practices Com.* (1977), 49 Ill. App. 3d 796, 805, 365 N.E.2d 535.) Under the analysis used by the Supreme Court in *Ricks,* plaintiff's attempts in the instant case to gain reinstatement cannot be considered independent of the March 27, 1978, decision and cannot, therefore, be viewed as independent acts of discrimination. This is especially true as to the March 14, 1980, decision not to reinstate. Plaintiff forced that ruling by defendant under plaintiff's collective bargaining agreement. Thus, the March 14, 1980, decision resulted from a grievance procedure and does not, therefore, constitute an independent act of discrimination.

For the reasons expressed herein, we find that the only actionable incident of discrimination occurred on March 14, 1980, when plaintiff unsuccessfully sought reinstatement. We also find that the March 14 incident, standing alone, cannot sustain an action for employment discrimination.

We therefore reverse the judgment of the circuit court and remand with directions to reinstate and affirm the finding of the administrative law judge.

Reversed and remanded with directions.

HARTMAN, P.J., and PERLIN, J., concur.