VIVIAN FAULKNER-KING, Petitioner, v. THE DEPARTMENT OF HUMAN RIGHTS *et al.*, Respondents.

Fourth District   No. 4—91—0301

Opinion filed February 6, 1992.

Robert G. Kirchner, of Lerner & Kirchner, of Champaign, for petitioner.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Eve Moran, Assistant Attorney General, of Chicago, of counsel), for respondent Human Rights Commission.

Michael R. Cornyn, of Thomas, Mamer & Haughey, of Champaign, for respondent University of Illinois School of Art and Design.

JUSTICE KNECHT delivered the opinion of the court:

Petitioner appeals the decision of the Illinois Human Rights Commission (Commission) (*In re Vivian Faulkner-King* (December 20, 1990), ____ Ill. Hum. Rights Comm'n Rep. ____ (HRC No. 1988—SF—0345)), affirming the decision of the Department of Human Rights (Department) that it lacked jurisdiction to hear her complaint because she had filed it more than 180 days after the alleged civil rights violation occurred. The complaint alleged the University of Illinois (University) denied her tenure and promotion on the basis of her sex, thereby violating the provisions of the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1989, ch. 68, par. 1—101 *et seq.*).

The petitioner had been an assistant professor at the School of Art and Design at the University. In the fall of 1985, she requested

tenure and promotion. On November 13, 1985, she received a letter from Director Wicks notifying her the School of Art and Design Personnel Committee (Committee) had voted not to recommend her for tenure and promotion. After receiving the letter from Wicks, petitioner decided she would appeal the Committee's recommendation. The appeal process resulted in Dean McKenzie determining the Committee had been unlawfully constituted and advising Wicks to appoint a new committee to review petitioner's file.

On May 8, 1986, petitioner received a letter from Wicks advising her the new committee had voted to deny her tenure. Later, she notified Wicks she would seek review of the recommendation. On August 11, 1986, Wicks informed her the committee had affirmed its original decision, and he would recommend to the dean that she be issued a notice of nonreappointment and offered a terminal contract. On August 11, 1986, Wicks sent letters to McKenzie and Vice-chancellor Goldwasser informing them of the committee's decision and requesting petitioner be issued a notice of nonreappointment and offered a terminal contract. On August 20, 1986, the board of trustees issued petitioner a terminal contract for the 1986-87 academic year. The contract specified that notice of nonreappointment after completion of the contract was thereby given.

On September 17, 1986, McKenzie responded to her request for an extension and further review by stating he would not change his previous recommendation to the vice-chancellor. On April 7, 1987, the Faculty Advisory Committee (FAC) recommended to Vice-chancellor Berdahl that reconsideration be given to petitioner's denial of tenure. On July 17, 1987, the petitioner was advised that Berdahl supported the University's decision. On August 20, 1987, petitioner's terminal contract expired.

On January 20, 1988, petitioner filed a complaint with the Department. The Department dismissed her complaint as filed more than 180 days after the alleged human rights violation had occurred. (See Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(A)(1).) The Department explained that on August 20, 1986, the petitioner was issued a terminal contract, and the statutory limitations period commenced running on that date. Petitioner filed her complaint on January 28, 1988, more than 1½ years after she had received notification of what amounted to her termination. Later, the Commission affirmed the Department's finding of lack of jurisdiction and stated the time for filing a charge had commenced on November 13, 1985, when she was originally informed she was not being recommended for tenure. However, it also stated the time period began to run on the date the board of trustees

issued her the terminal contract, *i.e.*, August 20, 1986. The Commission later denied petitioner's petition for rehearing before the entire Commission.

On appeal, petitioner contends (1) the Department lacked subject-matter jurisdiction to hear the complaint; (2) the complaint was filed timely; (3) the 180-day filing period is not jurisdictional, and therefore, the respondents should be estopped from asserting that her claim was untimely filed; and (4) the charge-filing limitations period is unconstitutional.

The Act prohibits "employers" from basing employment decisions on unlawful discrimination. (Ill. Rev. Stat. 1989, ch. 68, par. 2—102(A).) The prohibition extends only to employers as defined by the Act. (Ill. Rev. Stat. 1989, ch. 68, par. 2—101(B)(1).) Based on the definitions contained in the Act, petitioner first argues that the term "employer" does not include the University because it is a public corporation separate and distinct from the State and, therefore, asks this court to vacate the decision of the Commission and dismiss her appeal.

The petitioner evidently wants us to determine the Department did not have jurisdiction, not because her complaint was untimely but because the University is not an "employer." This is an absurd argument for petitioner to advance because, were we to accept her argument, we could not grant her any substantive relief.

Petitioner cites *People ex rel. Board of Trustees of the University of Illinois v. Barrett* (1943), 382 Ill. 321, 46 N.E.2d 951, to support her assertion the University is not part of the State. However, in *Barrett*, the supreme court was faced with the question of whether the Attorney General, by virtue of his office, was a legal advisor for the university and its board of trustees. After viewing the status of the university as a corporate entity, its relation to the State, and the powers vested in the Attorney General, the court concluded the university was a public corporation, and its trustees were entitled to select their own legal counsel. *Barrett*, 382 Ill. at 347, 46 N.E.2d at 964.

■ Although the University is not part of the State for purposes of being represented by the Attorney General, it does not follow that the University is not part of the State for purposes of the Act. Although the University is not an administrative division of the State and is not an agency or instrumentality of the State in the sense it is a department or branch of the State government, it nevertheless is a State institution. It was established by the State; it has no employees, but rather the employees are State employees and are paid by State

funds, the property of the University belongs to the State, the State retains some control over its operation, and all money derived from interest on funds invested, rents, tuition, et cetera, belong to the State. (*Barrett*, 382 Ill. at 338-47, 46 N.E.2d at 960-64.) Further, *Barrett* asserted the university functioned solely as an agency of the State for the operation and administration of the university. (*Barrett*, 382 Ill. at 343, 46 N.E.2d at 962.) Therefore, a significant connection exists to the State to consider it a part of the State for purposes of the Act. Moreover, the public policy of Illinois is to protect the fundamental employment rights of the citizens with respect to nondiscriminatory opportunity and employment. The definitions in the Act are broad to encompass many types of employers so as to effectively carry out this policy. To exclude the University from coverage under the Act would require that we give the term "State" an unnecessarily narrow interpretation in light of the policy of Illinois. We decline to do so and therefore reject petitioner's first argument.

Next, she argues the discriminatory act occurred on August 20, 1987, when her contract ended and no extension was provided, and hence, her complaint was timely filed within the meaning of section 7A—102(A)(1) of the Act. To support her argument, she contends that because of the continuing review process, even after the terminal contract was issued, it was not until August 20, 1987, that she became aware that her request for tenure and promotion had been finally decided.

Section 7A—102(A)(1) of the Act states:

> "Within 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the Department ***." (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(A)(1).)

An argument that the language of the 180-day charge-filing provision of a predecessor section of the Illinois Fair Employment Practices Act (Ill. Rev. Stat. 1975, ch. 48, par. 858) was permissive, rather than mandatory, was rejected in *Lee v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 666, 669, 467 N.E.2d 943, 945.

In determining the day upon which the allegedly discriminatory act occurred, the decision in *Delaware State College v. Ricks* (1980), 449 U.S. 250, 66 L. Ed. 2d 431, 101 S. Ct. 498, is instructive. It is appropriate to examine Federal decisions in the fair employment field because of the similarities between the Federal and Illinois enactments. *Lee*, 126 Ill. App. 3d at 672, 467 N.E.2d at 947.

In *Ricks*, the Supreme Court reviewed a decision under title VII of the Federal Civil Rights Act (42 U.S.C. §2000e—5(e) (Supp. IV

1974)) and held the limitations period commenced when the board of trustees notified respondent he would be offered a terminal contract.

In February 1973, the tenure committee there had recommended Ricks not receive tenure. The committee agreed to reconsider its recommendation but affirmed its original decision. Subsequently, he filed a grievance with the grievance committee. On June 26, 1974, the trustees informed him that he would be offered a terminal contract which would expire on June 30, 1975. The letter indicated that if the grievance committee voted to recommend tenure and the trustees concurred, it would supersede any previous action taken by the trustees. On September 12, 1974, the trustees notified Ricks they denied his grievance. The district court used June 26, 1974, as the relevant date commencing the statutory limitations period. (*Ricks*, 449 U.S. at 255, 66 L. Ed. 2d at 437, 101 S. Ct. at 502.) The court of appeals held the filing requirement did not commence until the terminal contract expired on June 30, 1975. *Ricks*, 449 U.S. at 255, 66 L. Ed. 2d at 438, 101 S. Ct. at 503, *rev'g by a divided Court, Ricks v. Delaware State College* (3d Cir. 1979), 605 F.2d 710.

The Supreme Court held the final date of his terminal contract did not control because for that date to control he would have had to allege the manner in which his employment was terminated discriminatorily differed from the manner in which the college terminated other professors denied tenure. Since no suggestion was made he was treated any differently than other unsuccessful tenure aspirants, this date could not control. This was so even though the effect of the denial, the eventual loss of his position, did not occur until later. *Ricks*, 449 U.S. at 258, 66 L. Ed. 2d at 439, 101 S. Ct. at 504.

The Court also rejected the court of appeals' reasoning that focusing on the final date of employment would provide a "bright line guide" in determining the date the charge-filing limitations period commenced. It asserted the fallacy of that view as a rule of general application was that the statute stated the limitations period commenced running on the date of the "alleged unlawful employment practice." In Ricks' case, that date occurred before his last date of employment. *Ricks*, 449 U.S. at 259, 66 L. Ed. 2d at 440, 101 S. Ct. at 505.

The Court further asserted the date the board had notified Ricks that his grievance had been denied did not control. Two theories had been advanced as to why this date should control. One theory was that the termination was not final, especially in view of the letter which stated the possibility that he would receive tenure if the trustees sustained the grievance. The second theory was that the pendency

of the grievance should toll the charge-filing limitations period. (*Ricks*, 449 U.S. at 260-61, 66 L. Ed. 2d at 441, 101 S. Ct. at 505.) The Supreme Court rejected both theories, stating the board had made clear before September 12 that it had rejected Ricks' tenure bid. Moreover, the court stated that "entertaining a grievance complaining of the tenure decision [did] not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it [was] made." (Emphasis in original.) (*Ricks*, 449 U.S. at 261, 66 L. Ed. 2d at 441, 101 S. Ct. at 505-06.) Additionally, "the pendency of a grievance, or some other method of collateral review of an employment decision, [did] not toll the running of the limitations periods." *Ricks*, 449 U.S. at 261, 66 L. Ed. 2d at 441, 101 S. Ct. at 506, citing *International Union of Electrical, Radio & Machine Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.* (1976), 429 U.S. 229, 50 L. Ed. 2d 427, 97 S. Ct. 441.

In *Board of Governors of State Colleges & Universities for Northeastern Illinois University v. Rothbardt* (1981), 98 Ill. App. 3d 423, 424 N.E.2d 742, we considered the decision in *Ricks* and held that "[f]or a decisionmaker to continue to study the rationale of a previous ruling [did] not amount to a reconsideration of the ruling and [did] not change the date of the formal action." Therefore, we affirmed the circuit court's ruling that the act of listening to tapes of an *ad hoc* committee meeting was not a remedy for a prior decision and did not start anew the time for filing a charge. *Rothbardt*, 98 Ill. App. 3d at 429, 424 N.E.2d at 747.

■ Based on the analysis used in these cases, we hold the alleged civil rights violation occurred when the terminal contract was issued, *i.e.*, August 20, 1986, and hence, the complaint was not timely filed. The University's "Guidelines Regarding the Procedures for the Issuance and Review of Notices of Nonreappointment of Faculty Members During Their Probationary Period" set forth the procedure for offering a terminal contract to a faculty member. The guidelines make clear that the issuance of a terminal contract by the board of trustees is the final step in the tenure process. The terminal contract clearly stated it was issued by the board of trustees. Therefore, a final decision had been made regarding petitioner's tenure. Any further action by the FAC or the petitioner would not affect the finality of the decision or toll the charge-filing limitations period. Moreover, certainly the petitioner should have been aware by July 17, 1987, when she was notified by the FAC that Vice-chancellor Berdahl supported the school's decision, that a final decision had been made regarding her

tenure and promotion. This date also would be beyond the 180-day charge-filing period and would deprive the Commission of jurisdiction.

Petitioner cites *Lever v. Northwestern University* (N.D. Ill. Feb. 2, 1990), No. 84—C—11025 (LEXIS No. 1262, Genfed library, Dist. file) (unpublished order), in an attempt to persuade this court it was reasonable for her not to have realized a final decision had been made regarding her tenure until her contract expired. However, *Lever* is distinguishable in that the district court found it was reasonable for petitioner not to be aware when a final decision had been made regarding her tenure because it was unclear as to who made the final decision to trigger the running of the statute of limitations. However, in the present case, it is clear the issuance of a terminal contract by the board of trustees is the final step in the tenure and promotion process.

Petitioner next argues if we find her complaint was not timely filed, we must then determine whether the charge-filing requirement is jurisdictional or in the nature of a statute of limitations. Petitioner asserts her action is premised on a constitutional right because when a State employee files a sex discrimination action, the action is based on rights contained in article I, sections 17, 18 and 19 of the Illinois Constitution, and in article I, section 2, which grants all people the rights to due process and equal protection. (Ill. Const. 1970, art. I, §§17, 18, 19; art. I, §2.) Since the Act only secures the rights guaranteed in sections 17, 18 and 19, she argues her cause of action is of a constitutional nature because it is based on specific provisions of the Constitution not covered by the Act, and, therefore, the 180-day charge-filing limitations period is not jurisdictional and is instead subject to the principles of estoppel.

■ However, courts have uniformly held that the charge-filing time limitations period is jurisdictional. *Rothbardt*, 98 Ill. App. 3d at 426, 424 N.E.2d at 745; *Larrance v. Human Rights Comm'n* (1988), 166 Ill. App. 3d 224, 231, 519 N.E.2d 1203, 1208; *Northtown Ford v. Human Rights Comm'n* (1988), 171 Ill. App. 3d 479, 488, 525 N.E.2d 1215, 1222.

The petitioner relies on *Pickering v. Human Rights Comm'n* (1986), 146 Ill. App. 3d 340, 496 N.E.2d 746, to support her argument. In *Pickering*, plaintiff filed a complaint with the Department, alleging he was fired because of his age and physical handicap. The Department dismissed the charge because it had not been filed within the 180-day time period, and the Commission sustained the Department's ruling. The plaintiff sought administrative review, contending the filing period was not jurisdictional because his cause of action was

based upon provisions in the Illinois Constitution. Relying on *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 486 N.E.2d 893, the *Pickering* court held the limitations period was jurisdictional. The court explained that the Illinois Constitution did not protect an employee from termination of employment because of a physical or mental handicap. Therefore, the rights plaintiff sought to protect were created by the Act. Moreover, the time limit was an inherent element of the right to be protected from termination based on age or handicap. *Pickering*, 146 Ill. App. 3d at 345-46, 496 N.E.2d at 750-51.

Although the *Pickering* court discussed the fact the rights plaintiff asserted were created by the Act, there was no indication that if the right was constitutionally based, the time limit would be considered a statute of limitations. Rather, the holding seems to apply to all rights protected under the Act. The court noted section 7−102(B), now section 7A−102(B) of the Act, specifically states: "This time period shall not be construed to be jurisdictional." (Ill. Rev. Stat. 1989, ch. 68, par. 7A−102(B).) Had the legislature wanted section 7−102(A), now section 7A−102(A), to be nonjurisdictional, the court asserted it could have provided as it did in section 7−102(B). *Pickering*, 146 Ill. App. 3d at 346-47, 496 N.E.2d at 751.

Furthermore, in *Robinson v. Human Rights Comm'n* (1990), 201 Ill. App. 3d 722, 559 N.E.2d 229, the Fifth District Appellate Court rejected a similar argument as that advanced by petitioner. The court noted the right in *Pickering* was created by the Act, and that the right in *Robinson*, to be protected from retaliation for encouraging opposition to discriminatory practices, was also created by the Act. However, the court held even if the right was recognized by common law, it would still conclude the time limitation was jurisdictional. The court based its conclusion on the fact the Act made it a right which could not be enforced other than under the agency created for its enforcement. By conferring authority upon the Department to enforce these rights, the Act turned it into a distinct right for which a timely filing of the charge was a precondition of enforcement. *Robinson*, 201 Ill. App. 3d at 728, 559 N.E.2d at 232-33.

It is clear the failure to file within the prescribed time limit deprives the Department of jurisdiction. Were we to hold otherwise, an anomaly would be created. The charge-filing time period would be jurisdictional for some rights under the Act and not for others. "That would be an unnatural bifurcation of the intention of the legislature." *Robinson*, 201 Ill. App. 3d at 729, 559 N.E.2d at 233.

■ Having reached the conclusion that the 180-day limitations period for filing a charge is jurisdictional, it would normally be unnecessary to address whether a respondent may be estopped from asserting the untimeliness of the complaint. However, courts have allowed a narrow exception to the jurisdictional time period. In *Lee*, the court held if the charge was untimely filed because of defendant's misleading conduct, defendant would be estopped from raising the limitations period as a defense. However, the defendant would be estopped only if it was conduct initiated by defendant which induced plaintiff not to act. *Lee*, 126 Ill. App. 3d at 669, 467 N.E.2d at 495.

In this case, petitioner alleges she sought the advice of an ombudsman at the University and was told she should pursue all internal remedies before pursuing any external remedies. As petitioner admitted, this representation was prompted by petitioner and, therefore, renders the exception inapplicable. Moreover, this representation did not alter the finality or actionability of petitioner's action. The conversation took place before December 24, 1985. She received her terminal contract in August 1986. Under the circumstances, it does not appear this statement should have misled petitioner into delaying the filing of her charge.

Additionally, in petitioner's reply brief, she alleges the Commission knowingly misled her and caused her to file her charge late. However, there is no evidence the agency intentionally misled petitioner. Moreover, even if estoppel were otherwise applicable, it could not be considered on appeal since she failed to raise it at the administrative level (*Robinson*, 201 Ill. App. 3d at 730, 559 N.E.2d at 234), or indeed any time before the filing of the reply brief (134 Ill. 2d R. 341(g); *People v. Minto* (1925), 318 Ill. 293, 296, 149 N.E. 241, 243).

■ Finally, petitioner argues that the 180-day charge-filing limitations period is unconstitutional. Petitioner wants this court to hold the Act is not the exclusive remedy for civil rights violations when an action is premised upon section 2 of the Illinois Constitution and that the 180-day limitations period is unreasonable. Section 8—111(C) of the Act states: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." (Ill. Rev. Stat. 1989, ch. 68, par. 8—111(C).) In *Mein v. Masonite Corp.* (1985), 109 Ill. 2d 1, 7, 485 N.E.2d 312, 315, the supreme court specifically resolved this issue by holding the Act provided the exclusive means of redress for civil rights violations.

■ Furthermore, the limitation does not appear to be unreasonable. In *Thakkar v. Wilson Enterprises, Inc.* (1983), 120 Ill. App. 3d

878, 883, 458 N.E.2d 985, 989, the court stated "[t]he limitations, administrative procedures and remedies of the [Act] *** are reasonable and were enacted with proper authority." (*Yount v. Hesston Corp.* (1984), 124 Ill. App. 3d 943, 947, 464 N.E.2d 1214, 1217.) Moreover, given the nature of the violation, the longer the limitations period the greater the burden of proving the charges, as evidence is not retained and witnesses' memories fade, and the greater the possibility of fraudulent charges. Therefore, the limitation would appear to be reasonable.

Further, the petitioner failed to cite any authorities in connection with this argument. It is often stated that reviewing courts are "not a depository in which an [appellant] is allowed to dump entire matters of pleadings, court actions, arguments or research upon the court." (*Finke v. Woodard* (1984), 122 Ill. App. 3d 911, 921, 462 N.E.2d 13, 20, citing *In re Estate of Kunz* (1972), 7 Ill. App. 3d 760, 288 N.E.2d 520.) Mere contentions without providing citations do not merit consideration on appeal. *In re Tally* (1991), 215 Ill. App. 3d 385, 390-91, 574 N.E.2d 1262, 1265; *People v. Hood* (1991), 210 Ill. App. 3d 743, 746, 569 N.E.2d 228, 230.

We believe a decision in favor of respondents and an affirmance is clearly correct. However, we also note some of the issues here were created by the University's own procedures. The stream of letters back and forth, committee meetings and assorted recommendations by committees and individuals did not create a climate of plain meaning and clear understanding. While this record supports the Commission's decision, we trust in the future the University will make every effort to ensure that employees are distinctly aware when a final decision regarding their employment has been made, and—in particular—when the time for pursuing their rights outside the University has begun.

The Commission's order is affirmed.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.