JOSEPH TREMBCZYNSKI, Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

First District (1st Division)   No. 1—91—3873

Opinion filed August 30, 1993.

Louis V. Kiefor, of Calumet City, for petitioner.

Knight, Hoppe, Fanning & Knight, Ltd., of Des Plaines (Elizabeth A. Knight and Janella L. Barbrow, of counsel), for respondents.

JUSTICE CAMPBELL delivered the opinion of the court:

Petitioner Joseph Trembczynski appeals an order of the Illinois Human Rights Commission (Commission) dismissing his complaint against respondents, the City of Calumet City (City) and the Board of Fire and Police Commissioners of the City of Calumet City (Board), for lack of jurisdiction. On appeal, petitioner contends that (1) the Commission's finding was in error, and (2) respondents' alleged vision requirement is not a *bona fide* occupational qualification. For the following reasons, we affirm the finding of the Commission.

The record provides the following relevant facts. On July 24, 1987, petitioner filed a charge with the Illinois Department of Human Rights (Department) against the City and the Board alleging handicap discrimination. Subsequently, the Department filed charges in the Commission on petitioner's behalf under section 2—102(A) of the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 2—102(A)) alleging discrimination in hiring on the basis of a handicap. Respondents filed a motion to dismiss petitioner's charge, arguing that the charge was untimely filed with the Department. In reply, petitioner filed an amended complaint, accompanied by his own affidavit and numerous exhibits. The administrative law judge (ALJ) made the following findings of fact based on assertions set forth in petitioner's affidavit.

From 1979 through May 1, 1986, the City and the Board had a policy in effect requiring all applicants for patrolman or patrolwoman to have at least 20/30 vision in each eye without correction. As part of the application process, applicants were required to undergo written and medical examinations, including a vision examination.

In March 1980, petitioner became a member of the reserve police division of the Calumet City police department (Police Department). In November 1980, petitioner took a written examination as an applicant for a permanent position in the Police Department. However, petitioner's name was struck from the preliminary eligibility list because he wore glasses.

In 1982, the City conducted another examination for appointment of police officers. Petitioner was advised by Edward J. Fitzgerald, a member of the Board, that he should not bother to take the test because he wore glasses.

On March 8, 1986, petitioner took the written examination as an applicant for the position of patrolman in the Police Department. On March 10, petitioner was informed in writing that he had passed the written examination and that an oral examination was scheduled for March 18. Subsequently, petitioner scheduled a vision examination with the Hammond Clinic, Munster, Indiana, for April 28, 1986.

On April 14, 1986, petitioner was notified in writing that he had received a score of 106, which placed him within the top 10 candidates for a patrolman position. On the same day, the Board posted a police preliminary eligibility list. Petitioner's name did not appear on the list. Petitioner telephoned Guy Eveland, a Board member, and Eveland told petitioner to proceed with his vision examination

on April 28, as scheduled, because the final eligibility list would probably not be ready prior to that date.

On April 25, 1986, the Board posted the final eligibility list. Petitioner's name did not appear on the list. Petitioner's vision examination was conducted as scheduled on April 28, 1986. The results indicated that petitioner had 20/50 vision in his left eye and 20/80 vision in his right eye, correctable to 20/20 with glasses. Petitioner did not receive written notice regarding his exclusion from the final eligibility list, but suspected his exclusion was related to the fact that he wore glasses.

On May 1, 1986, the Board issued new eligibility standards for patrolmen/patrolwomen, requiring applicants to have only 20/40 vision in each eye, without correction. The Board refused petitioner's request to retest under the new standard.

On or about July 15, 1986, the Board issued a revised police eligibility list. Petitioner's name did not appear on the list and he was not advised of the reason for his exclusion.

Between January 26 and January 29, 1987, petitioner had conversations with Eveland wherein he asked Eveland for a written explanation for his exclusion from the revised eligibility list. Eveland told petitioner that a written explanation was not necessary because petitioner failed the vision examination.

After reviewing petitioner's assertions, the ALJ dismissed petitioner's charge as untimely because it was not filed within 180 days of the alleged discriminatory act as required by section 7A—102(A)(1) of the Human Rights Act. (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(A)(1) (formerly Ill. Rev. Stat. 1985, ch. 68, par. 7—102(A)(1)).) The ALJ found that petitioner had knowledge of the facts necessary to make a timely charge on July 15, 1986, but failed to file his charge in the Department until July 24, 1987.[1]

Petitioner filed exceptions to the recommendation with the Commission, arguing that the ALJ's decision was in error because respondents' conduct was "continuous and ongoing." Petitioner claimed that each day that the Board refused to hire him should be

---

[1]The record indicates that petitioner filed a lawsuit in the United States District Court for the Northern District of Illinois against respondents on February 3, 1987, alleging violations of due process and equal protection under the fourteenth amendment. The Federal magistrate issued a report and recommendation to dismiss petitioner's suit on June 30, 1987. The court adopted the magistrate's recommendation and dismissed petitioner's suit on August 31, 1987. Petitioner did not appeal the Federal court's decision.

considered a new act of discrimination and should initiate a new 180-day filing period. After reviewing the administrative record, a three-member panel of the Commission issued an order on October 3, 1991, adopting the decision of the ALJ and dismissing the complaint with prejudice. Petitioner's subsequent petition for rehearing before the full Commission was denied on November 27, 1991. Petitioner now appeals directly to this court under Supreme Court Rule 335 (134 Ill. 2d R. 335).

On appeal, petitioner contends that the Commission erred in dismissing his complaint for lack of jurisdiction.

■ Section 7A—102(A)(1) of the Illinois Human Rights Act provides:

"Within 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the Department by an aggrieved party or issued by the Department itself under the signature of the Director." (Ill. Rev. Stat. 1989, ch. 68, par. 7A—102(A)(1).)

This 180-day filing requirement is jurisdictional. (*Whitaker v. Human Rights Comm'n* (1989), 184 Ill. App. 3d 356, 540 N.E.2d 361; *Polacek v. Human Rights Comm'n* (1987), 160 Ill. App. 3d 664, 513 N.E.2d 1117.) Failure to file a charge within the prescribed time deprives the Department and the Commission of jurisdiction to proceed further. *Polacek*, 160 Ill. App. 3d at 667; *Lee v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 666, 669, 467 N.E.2d 943, 945.

Petitioner contends that a "continuing violation" exists for purposes of tolling the running of the 180-day limitations period. Petitioner argues that the Board's discriminatory vision "policy" was "applied" each time the Board hired from the eligibility list an individual who had scored lower than petitioner on the police examinations. Petitioner argues that because the vision policy was in effect through January 29, 1987, the date on which petitioner last spoke with Eveland to request reasons for his exclusion from the revised eligibility list, the filing period was tolled to that time.

We reject petitioner's claim based on *Polacek v. Human Rights Comm'n* (1987), 160 Ill. App. 3d 664, 513 N.E.2d 1117. There, the petitioner was laid off from Amex, Inc., because he was unable to perform the duties of his position. Polacek filed a charge with the Department more than 180 days after the date of his layoff, and Polacek's action was dismissed by the Commission for lack of jurisdiction. *Polacek*, 160 Ill. App. 3d at 666.

On appeal, Polacek asserted that a continuing violation existed for purposes of staying the running of the limitations period, because other individuals had been hired by Amex, Inc., in deference to Polacek's "right to be rehired." This court found Polacek's claim meritless, stating that "[i]f it were the case that so long as an act remains unrevoked the limitation period continues to run, the Human Rights Act's 180-day limitation period would have no meaning." (*Polacek*, 160 Ill. App. 3d at 669.) This court noted that, for the same reason, the petitioner's argument was rejected in *EEOC v. Cushman & Wakefield, Inc.* (S.D.N.Y. 1986), 643 F. Supp. 209, where the court stated:

> "Under counsel's argument, any time an employee is improperly dismissed, the employer would have a continuing duty to reinstate the employee, and the statute of limitations would never begin to run. In essence, the statute of limitations would become a nullity. *** The 300 day statutory period can be tolled only if the alleged discriminatory practice proved to be a continuing violation. *'[A]cts concerning hiring and termination do not constitute continuing violations, while policies concerning promotion and pay generally qualify to toll the statutory period.'* [Citations.]" (Emphasis added.) *Cushman*, 643 F. Supp. at 214.

This court considered a similar argument in *Lee v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 666, 467 N.E.2d 943. There, Lee alleged a "continuing violation" because he unsuccessfully attempted on four occasions to gain reinstatement to his job after he was laid off. The court initially determined that in resolving the issue of whether or not a charge was timely filed, the critical question is whether any present violation exists. (*Lee*, 126 Ill. App. 3d at 671, citing *United Air Lines v. Evans* (1977), 431 U.S. 553, 558, 52 L. Ed. 2d 571, 578, 97 S. Ct. 1885, 1889 (title VII case).) The court found that the alleged discrimination occurred on the day Lee's employment was terminated; thus, the employer's subsequent refusals to reinstate Lee did not constitute a "continuing violation." The court concluded that Lee's attempts to regain his job could not be viewed as independent acts of discrimination for purposes of triggering the 180-day limitations period and therefore affirmed the decision of the Commission that jurisdiction was lacking because the charge had not been timely filed. *Lee*, 126 Ill. App. 3d at 672, 467 N.E.2d at 947.

We find petitioner's argument that *Cushman* creates a distinction between discriminatory "acts" and discriminatory "policies"

unavailing. Petitioner argues that he was refused eligibility as the result of a discriminatory "policy," rather than an "act of discrimination," and therefore the violation is continuing. We believe that petitioner has misread *Cushman*. In defining a continuing violation, *Cushman* specifically distinguishes between issues of "hiring and termination" versus issues of "promotion and pay," not "acts" versus "policies."

As such, the cases cited by petitioner are inapplicable to the present case, as they relate to employment policies affecting individuals who are currently employed, and regarding such matters as promotions, rate of pay or the application of a seniority system. See, *e.g., Northtown Ford v. Human Rights Comm'n* (1988), 171 Ill. App. 3d 479, 525 N.E.2d 1215 (female employee paid less than male predecessor allowed to recover back pay for the discriminatory salary limited to a period of 180 days prior to the filing of her charge; every time the petitioner received a paycheck, a new act of discrimination occurred); *Lorance v. A T & T Technologies, Inc.* (1989), 490 U.S. 900, 911, 104 L. Ed. 2d 961, 975, 109 S. Ct. 2261, 2269 (limitations period commenced at the point where a facially nondiscriminatory seniority system produced a change in petitioners' contractual seniority rights, the point at which respondents adopted a new system); *Bazemore v. Friday* (1986), 478 U.S. 385, 92 L. Ed. 2d 315, 106 S. Ct. 3000 (title VII requires discriminatory practices in effect prior to existence of title VII to be eliminated, *i.e.,* defendant's practice of paying less money to a black than to a similarly situated white because of race).

Petitioner's further reliance on *Roberts v. North American Rockwell Corp.* (6th Cir. 1981), 650 F.2d 823, is similarly unavailing. There, the court found Rockwell's alleged policy of not hiring women to be a clear, continuing violation of title VII (42 U.S.C. §2000e *et seq.* (1988)): "[W]hen a company fails to hire or promote someone *because of their race or sex* *** courts do not hesitate to apply what has been termed the continuing violation doctrine. [Citations.]" (Emphasis added.) (*Roberts*, 650 F.2d at 826.) Here, petitioner does not allege discrimination in hiring based on his race or sex.

■ In the present case, the record shows that petitioner discovered on July 15, 1986, that he was excluded from the revised eligibility list for the position of patrolman. The record further reveals that petitioner did not file his charge in the Department until July 24, 1987. There is nothing in the record that prevented petitioner from filing his charge within the required 180 days following the

posting of the revised eligibility list. Since petitioner filed his charge more than 180 days after his dismissal, we find that the charge was untimely filed and therefore properly dismissed by the Commission for lack of jurisdiction.

Petitioner's further argument that the Board's vision requirement was not a *bona fide* occupational qualification need not be addressed by this court. As this case was dismissed on respondents' motion prior to hearing, it is improper for petitioner to argue the merits of his claim at this time.

For the above reasons, we affirm the finding of the Commission.

Affirmed.

MANNING, P.J., and O'CONNOR, J., concur.