2024 IL App (1st) 221300-U

FIRST DIVISION
February 13, 2024

No. 1-22-1300

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| WILLIE WESLEY, JR., | ) Petition for Direct Administrative |
| | ) Review of the Final Order of the |
| Petitioner-Appellant, | ) Illinois Human Rights Commission. |
| | ) |
| v. | ) |
| | ) No. 2016 CR 3417 |
| CHICAGO TRANSIT AUTHORITY, ILLINOIS | ) |
| HUMAN RIGHTS COMMISSION, and ILLINOIS | ) |
| DEPARTMENT OF HUMAN RIGHTS, | ) |
| | ) |
| Respondents-Appellees. | ) |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

*HELD*: Illinois Human Rights Commission's final administrative decision sustaining Illinois Department of Human Rights' dismissal of petitioner's charge of employment discrimination for lack of jurisdiction is affirmed where petitioner's charge was, by all accounts, untimely filed.

¶ 1 In this administrative matter, petitioner-appellant Willie Wesley, Jr. (petitioner) appeals, *pro se*, from a decision issued by respondent-appellee Illinois Human Rights Commission (Commission) sustaining respondent-appellee Illinois Department of Human Rights'

(Department) dismissal for lack of jurisdiction of his employment discrimination charge in relation to a position he sought with respondent-appellee Chicago Transit Authority (CTA). Although his brief is almost incomprehensible (something we will discuss in more detail below), petitioner seemingly contends on appeal that his complaint was timely filed and, thus, that jurisdiction was appropriate. He asks that we compensate him "$11,000,000," "or precisely .01 tenth's percent of $1.1 billion dollar's." The Commission and Department have filed a brief in this matter, as has CTA, contending that the decision below was proper. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3        We begin by making clear for the record that at the time petitioner filed his employment discrimination charge, and at all times relevant to this cause, section 7A-102(A)(1) of the Illinois Human Rights Act (Act) was in effect and prescribed a 180-day limitations period for the filing of such claims. See 775 ILCS 5/7A-102(A)(1) (West 2016). Although that section has been subsequently amended to expand this period to 300 days (as it currently stands), that amendment did not take effect until 2018. See 775 ILCS 5/7A-102(A)(1) (West 2018) (amendment effective Aug. 24, 2018). All parties to this appeal, including petitioner, expressly agree that the prior version of the statute mandating a 180-day limitations period is applicable to the instant appeal; none, again including petitioner, make any argument that the subsequent amended version is at all relevant here.

¶ 4        The following facts are taken from the record on appeal.

¶ 5        In June 2015, petitioner applied for a job with CTA as a part-time bus driver. Following an interview, CTA emailed him on August 11, 2015 informing him that he was not a "fit" for

2

the position and, thus, had not been selected. The email was sent to the email address petitioner had provided on his application and profile documents, via the "bcc" line of the email. Later, in October 2015, petitioner emailed CTA's human resources department inquiring about the status of his application. On December 4, 2015, CTA sent petitioner a second email to the same email address; this email referenced the prior August email and again informed petitioner that he had not been hired for the position.

¶ 6    On June 9, 2016, petitioner filed a charge with the Equal Employment Opportunity Commission (EEOC) asserting employment discrimination on the part of CTA based on his race, color, sex, age, disability and genetic information. The EEOC declined to pursue the charge. Thereafter, he asked the Department to investigate his complaint. The Department did so and issued a report with its findings. These included that petitioner had applied for a position with CTA, CTA interviewed him, CTA did not hire him, and CTA notified him of this via the August 11, 2015 email. It determined that, as the alleged violation occurred on August 11, 2015, and as he did not file his claim with the EEOC until June 9, 2016, this was "beyond 180 days" as prescribed by the Act, warranting dismissal of his charge.

¶ 7    Petitioner then requested administrative review from the Commission. In his request, he denied ever receiving the August 11, 2015 email and stated he did not learn of CTA's decision not to hire him until January 8, 2016, which would make his June 9, 2016 filing with the EEOC timely. The Department responded by providing the Commission with evidence that CTA did, indeed, send petitioner the August 11, 2015 email. Upon review, the Commission determined that there was a factual dispute as to when petitioner was first

3

informed that he would not be hired, which needed to be resolved. Accordingly, it referred the matter to an administrative law judge (ALJ) for an evidentiary hearing.

¶ 8     When the matter came before the ALJ, CTA field a motion for summary decision in lieu of conducting an evidentiary hearing. CTA offered its evidence in support of its contention that petitioner was notified via the August 11, 2015 email. This included, among other items, the email itself, an affidavit from a CTA employee that it was sent and addressed to petitioner at the email he provided, and statements from interviews with petitioner during the Department's investigation wherein he confirmed he knew as of August 2015 that CTA would not be hiring him. Petitioner responded by again stating he never received that email. However, he admitted CTA emailed him on December 4, 2015, after he had inquired about the status of his application. He confirmed that he received that email the same day it was sent by CTA, but that he did not open and read it until January 8, 2016. He then argued, first, that the 180-day statutory limitations period should not begin to run until January 8, 2016 when he first learned he would not be hired, making his charge timely; and, second, that even using the December 4, 2015 date, only business days, and not holidays or weekends, should count toward the time-period, still rendering his charge timely.

¶ 9     After examining the evidence and arguments, the ALJ issued a Report. In its findings of fact, the ALJ made the following factual determinations: CTA emailed petitioner on August 11, 2015 informing him he would not be hired; CTA emailed him a second time on December 4, 2015 following his inquiry to again inform him he was not hired; petitioner admitted he received the December 4, 2015 email on that date and chose not to open or read it until January 8, 2016; he never denied that he told Department investigators he knew as of

4

August 2015 that he was not hired; all of the emails CTA sent to petitioner used the same email address, which he had provided in his application; and there are 188 days between December 4, 2015 and June 9, 2016. From all this, the ALJ concluded, first, that as petitioner admitted to the Department during the investigation that he learned of CTA's decision in August 2015, and as he has never denied his statements, the 180-day limitations period should begin on the date of the first email, August 11, 2015. As this was some 10 months before he filed the EEOC charge on June 9, 2016, his claim was untimely. Next, and putting that earliest date aside for the moment, the ALJ further noted that petitioner conceded he received the December 4, 2015 email from CTA and admitted he received it on that date. Accordingly, and because 188 days elapsed between December 4, 2015 and June 9, 2016, his claim was still untimely. Finally, the ALJ noted that petitioner provided no legal authority for his assertion that the limitations period should begin to run only after he chose to open and read the December 4, 2015 email. Accordingly, the ALJ's recommendation to the Commission was that it deny petitioner's request for review.

¶ 10        The matter then returned to the Commission, which adopted the ALJ's recommendation. It found that the evidence was undisputed that CTA sent petitioner an email on August 11, 2015 notifying him he would not be hired. It also found that petitioner admitted he received the December 4, 2015 email from CTA on that date, but chose not to open or read it at that time. Based on all the evidence, the Commission concluded that petitioner's EEOC charge filed on June 9, 2016 was untimely under the Act pursuant to either date, given he did so 10 months after the August 11, 2015 email and/or 188 days after he received the December 4,

5

2015 email. Therefore, in its final administrative decision, the Commission sustained the Department's dismissal of petitioner's charge for lack of jurisdiction.

¶ 11                                    ANALYSIS

¶ 12        As a threshold matter, we cannot overlook petitioner's noncompliance with Illinois Supreme Court Rule (Rule) 341's mandates governing the form and content of appellate briefs. See Ill. Sup. Ct. R. 341 (eff. Feb. 6, 2013). While we are cognizant that petitioner appears *pro se*, we say this because it is not as if he has violated only one or two of the Rule's requirements, which could potentially be overlooked. See *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8 (compliance with rules governing briefs on appeal is compulsory regardless of a party's status). That would be a major understatement. His brief is handwritten, with comments and thoughts crammed in margins that cannot be followed or comprehended. It does not contain a Table of Contents, a Standard of Review, a proper Appendix, or a non-argumentative Facts section. There are no relevant record citations nor legal citations. His opening brief is 198 pages long and his reply brief is 74 pages long; both are interspersed with non-record attachments including photographs, photocopies of newspaper articles, and printed emails that are entirely irrelevant to the instant matter. In addition to a prayer for relief we do not understand, he presents a multitude of overlapping arguments that are mostly indecipherable.

¶ 13        In its brief on appeal, CTA urges us to strike petitioner's brief and dismiss this appeal. And, perhaps, we should. See *Matlock v. Illinois Department of Employment Security*, 2019 IL App (1st) 180645, ¶ 14, and *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 11 (content and formatting rules are mandatory, *pro se* litigants are not absolved

from these requirements, and we may choose to dismiss an appeal upon the failure to abide by them). However, while we have the prerogative to do so (see *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 80), we choose not to here because in our view, the issue is clear: it is, at its core, the same one petitioner has argued before the Department, the Commission and the ALJ, namely, that his discrimination claim should not have been dismissed for lack of jurisdiction because, in his view, it was timely filed. Moreover, we have two cogent appellee briefs and a complete record before us (see *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (reviewing merits of the appeal despite appellant's Rule 341 violations)). Accordingly, we address this appeal in full so this matter can finally receive a judicial resolution.

¶ 14        Turning to the merits, then, we find that petitioner fails to present any viable argument warranting the reversal of the Commission's decision.

¶ 15        Under the Act, it is "a civil rights violation for any person on the basis of unlawful discrimination to * * * [d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A) (West 2016). Where a petitioner brings a charge under the Act, the Department shall conduct an investigation to determine whether the allegations are supported by substantial evidence. See 775 ILCS 5/7A-102(C)(1) (West 2016). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla" of proof. 775 ILCS 5/7A-102(D)(2) (West 2016). If the Department determines there is no substantial evidence supporting the charge, it shall dismiss the charge. See 775 ILCS 5/7A-102(D)(3) (West 2016). The petitioner may then either

commence a civil action in circuit court or, as petitioner did here, file a request for review of the dismissal with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2016).

¶ 16        A final order of the Commission may be judicially reviewed by our Court under the abuse of discretion standard of review. See 775 ILCS 5/8-111(B)(1) (West 2016); *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under this standard, we will not disturb the Commission's decision unless it is arbitrary or capricious. See *Young*, 2012 IL App (1st) 112204, ¶ 33. A decision is arbitrary or capricious if it contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an impossible explanation contrary to agency expertise. See *Owens v. Dep't of Human Rights*, 403 Ill. App. 3d 899, 917 (2010). We review the final order of the Commission, not the Department's decision. See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The Commission's findings of fact "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-11(B)(2) (West 2016). This deference to the Commission's findings of fact is particularly true of the credibility determinations it makes. See *Zaderaka*, 131 Ill. 2d at 180; accord *Folbert v. Dep't of Human Rights*, 303 Ill. App. 3d 13, 25 (1999). A reviewing court may not reweigh the evidence or substitute its judgment for that of the Commission, and abuse of discretion will be found only where no reasonable person could agree with the decision rendered. See *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 17        As noted at the outset of our decision, and as all the parties to this appeal agree, the prior version of section 7A-102(A)(1) governed the timeliness of the filing of petitioner's discrimination claim. It afforded him 180 days from the date that the civil rights violation

occurred to file it. See 775 ILCS 5/7A-102(A)(1) (West 2016); *Trembczynski v. Human Rights Comm'n*, 252 Ill. App. 3d 966, 969 (1993). Our Court has made repeatedly clear that this 180-day filing requirement is jurisdictional. See *Trembczynski*, 252 Ill. App. 3d at 969 (citing *Whitaker v. Human Rights Comm'n*, 184 Ill. App. 3d 356, 359 (1989), and *Polacek v. Human Rights Comm'n*, 160 Ill. App. 3d 664, 667 (1987)). The failure to file a charge of discrimination within this prescribe time deprives the Department and the Commission of jurisdiction to proceed any further with respect to it and any of the claims asserted therein. See *Trembczynski*, 252 Ill. App. 3d at 969 (citing *Polacek*, 160 Ill. App. 3d at 667, and *Lee v. Human Rights Comm'n*, 126 Ill. App. 3d 666, 669 (1984)). Plainly put, compliance with section 7-102(A)(1)'s time limit "is a condition precedent to the right to seek a remedy," it is "a prerequisite to the Commission's acquisition of subject matter jurisdiction," and neither the Department nor the Commission has any power or authority to consider complaints based on untimely-filed charges. *Weatherly v. Illinois Human Rights Comm'n*, 338 Ill. App. 3d 433, 437 (2003) (citing *Robinson v. Human Rights Comm'n*, 201 Ill. App. 3d 722, 728 (1990), *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 209-10 (1985), and *Pickering v. Illinois Human Rights Comm'n*, 146 Ill. App. 3d 340, 344-47 (1986)).

¶ 18        Considering any of the operable dates mentioned in this cause, petitioner's discrimination claim was untimely and divested the Department and the Commission of any jurisdiction.

¶ 19        First, as the ALJ did here, we examine the August 11, 2015 date. The Department and CTA alleged that this was the date that CTA first emailed petitioner to inform him he would not be hired. Petitioner denied this, alleging he never received an email on that date from

9

CTA. However, CTA produced the email for the ALJ on which defendant's email address appeared in the "bcc" line, along with an affidavit from a CTA employee attesting that the email was sent on that date to the same email address petitioner provided on his application, and copies of statements petitioner made during the Department's investigation in which he stated he knew as of August 2015 that he would not be hired. Based on this evidence, the ALJ made a finding of fact that petitioner had been informed of the adverse hiring decision via CTA's August 11, 2015 email to him. Deferring to this factual determination as we must under our standard of review here, the statutory 180-day limitations period began to run, then, on that date. See *Cano v. Village of Dolton*, 250 Ill. App. 3d 130, 138 (1993) ("for the purposed of the 180-day limitation period to file a complaint with [the department], a discriminatory event will be complete and will be considered actionable at the first instant in which a complainant receives notice of the allegedly discriminatory conduct"). Petitioner, however, did not file his claim until June 9, 2016, some 10 months after August 11, 2015. As this was more than the 180-day period allowed by the Act, his claim was untimely and neither the Department nor the Commission had jurisdiction to consider it.

¶ 20    Next, even were we to, for some reason, choose to ignore the ALJ's finding of fact that petitioner received notice of the adverse hiring decision via the August 11, 2015 email, his claim would still be untimely. Petitioner insisted before the Commission and the ALJ, and he seemingly does so again in his brief on appeal, that he never received that first email from CTA, even though his own statements to the Department indicated otherwise. Indeed, and upon the Commission's acknowledgement and referral, it was this very discrepancy that brought this matter before the ALJ. Thus, we could conceivably give petitioner the benefit of

10

the doubt. For example, he states, and CTA has never denied, that he emailed CTA in October 2015, two months after the August 11, 2015 email, inquiring about the status of his application. A plausible reason for this would be that he had not yet received notice of CTA's adverse employment decision.

¶ 21 However, while we recognize this possibility, it would, regardless, do little to help petitioner. This is because, while an argument might be made that he did not receive the August 11, 2015, email, the same cannot be said when it comes to CTA's second email sent December 4, 2015. That email, which referenced the first, came two months after petitioner's email inquiring about the status of his application. Undeniably, and indisputably, petitioner admitted he received CTA's December 4, 2015 email. Not only that, but he conceded that it appeared in his email box on the same day CTA sent it—again, December 4, 2015. Affixing this later date as the date on which he received notice of the allegedly discriminatory conduct, the 180-day limitations period would have begun, then, on December 4, 2015. However, the day petitioner filed his charge was, again, June 9, 2016—188 days later. Accordingly, even under this later date, petitioner's claim was nonetheless untimely.

¶ 22 The last cognizable argument petitioner raises herein is two-fold. First, he claims that because he did not open the December 4, 2015 email, which he admittedly received on that date, until January 8, 2016, it is this date that becomes operable for the sake of jurisdiction, and as this date is only 154 days from the date he filed his charge (June 9, 2016), his charge was timely. This is unfathomable. Not only does he fail to cite to a single piece of legal precedent supporting such a claim, but this is in direct contravention to every one we have found. It is well established that the Act's 180-day limitations period "runs from the date the

11

claimant first received notice of the allegedly discriminatory conduct, as opposed to the time at which the harm caused by the alleged misconduct was most acutely felt." See *Constant v. Turris Coal Co.*, 199 Ill. App. 3d 214, 222 (1990). In other words, the clock does not begin to run when a litigant *chooses* to make himself aware of the alleged discrimination but, rather, when it is *communicated* to him, *i.e.*, when he actually, and first, receives notice of it. See *Allen v. Lieberman*, 359 Ill. App. 3d 1170, 1178 (2005) ("courts focus on the time the discriminatory decision is made and communicated to the complainant, not on the time the consequences of the decision are felt). Here, that would have been August 11, 2015, or more generously, December 4, 2015, not January 8, 2016. Moreover, we cannot even begin to contemplate what our laws would look like and how they would operate if we accepted petitioner's argument that nothing is set in motion until a potential litigant, who admits he received an email about a potential claim he might want to pursue, finally opens and reads an email notifying him of that potential claim at a time of his own choosing. Not only would this make statutes of limitations ineffectual, but any attempt to enforce a limitations period would necessarily be swallowed up were this to be accepted.

¶ 23    Second, petitioner insists that were we not to accept his argument for using the January 8, 2016 date, his charge was nevertheless timely pursuant to the December 4, 2015 date because weekends and holidays must not be counted within the 180-day limitations window. Under his view, there were only 134 days between December 4, 2015 and June 9, 2016 if weekends were not counted, and only 128 days if weekends and holidays (including his own birthday) were excluded--either way rendering his charge timely. However, just like his others, this argument is meritless in every way possible. Again, he fails to cite any legal proposition for

12

this. And, again, his assertion is in direct contravention to our well-established precedent. See, *e.g.*, *Budzileni v. Dep't of Hum. Rts.*, 392 Ill. App. 3d 422 (2009), and *Villalobos v. FDL Foods, Inc.*, 298 Ill. App. 3d 132 (1998) (calculating Act's 180-day limitations period by counting all calendar days from date of alleged violation); see also, *e.g.*, *Carroll v. Dept. of Employment Security*, 389 Ill. App. 3d 404 (2009) (rejecting claim that an administrative 35-day statutory filing period included only days on which courts are open). No more needs to be said in this regard.

¶ 24                                   CONCLUSION

¶ 25        Ultimately, petitioner failed to file his discrimination charge against CTA in a timely manner. His June 9, 2016 filing was 10 months after he received the August 11, 2015 email from CTA about its adverse employment decision, and more generously, 188 days after he received (via his own concession) CTA's second December 4, 2015 email stating the same. In either instance, his filing was beyond the Act's 180-day limitations period for filing a discrimination claim. As neither the Department nor the Commission have the power under the Act to review his charge because of its untimeliness, it was properly dismissed for lack of jurisdiction.

¶ 26        Accordingly, for all the foregoing reasons, we affirm the Commission's order sustaining the Department's dismissal of petitioner's charge for lack of jurisdiction.

¶ 27        Affirmed.

13